NOTE. In the case of The Sarah Starr the circuit court, on appeal, July 17, 1863, affirmed this decree as to the vessel and the cargo claimed by Evans, and reversed it as to the cargo claimed by the Munros. [Case No. 12,353.] A further appeal to the supreme court was taken by the claimant of the vessel, but none as to the cargo. [Unreported.] In the case of The Aigburth this decree was affirmed by the circuit court, on appeal, July 17, 1863. [Case No. 106].

[For opinion on question of marshal's fees after bonding for appeal, see Case No. 105.]

## Case No. 12,353.

### The SARAH STARR.[1]

[1 Blatchf. Pr. Cas. 650.] [2]

Circuit Court, S. D. New York.  July 17, 1863.

PRIZE—ENEMY PROPERTY—VIOLATION OF BLOCKADE—RESIDENCE IN ENEMY COUNTRY.

1. Decree of the district court, acquitting the vessel and cargo on the charge of violating the blockade, and condemning the vessel and cargo as enemy property, affirmed as to the non-violation of the blockade, and as to the vessel and a part of the cargo, they being enemy property, and reversed as to the residue of the cargo, it not being enemy property.

2. The claimants of such residue of the cargo were not citizens or residents of the enemy's country, and left it as soon after the breaking out of hostilities as they could convert their property into funds which could be conveniently carried with them; and they were entitled to a reasonable time to withdraw from their business connections in the enemy's country after the breaking out of the war.

[Appeal from the district court of the United States for the Southern district of New York.]

In admiralty.

NELSON, Circuit Justice. The Sarah Starr, with her cargo, was captured on the 3d day of August, 1861, by the United States steamer Wabash, at sea, some thirty miles off Wilmington, North Carolina. The vessel was owned by Cowlan Gravely, a British subject, resident in Charleston, South Carolina. The cargo, consisting of spirits of turpentine and resin, was the property of G. C. & W. J. Munro, citizens of the state of Rhode Island, and residents there, with the exception of 50 barrels of turpentine, which belonged to D. Evans, a citizen and resident of Washington, North Carolina. The Sarah Starr was purchased from C. B. Eddy by the Munros in March, 1859, and was sold and transferred by them to C. Gravely on the 1st of July, 1861. The cargo was put on board of her during the same month, to be shipped to Liverpool. The

vessel entered the port of Wilmington in March, 1861, and remained there till she sailed on her present voyage, about the 26th of July. The port of Wilmington was not in a state of actual blockade at the time of the egress of the vessel from that port. The vessel and cargo were condemned as enemy property, and acquitted upon the charge of violating the blockade.

I concur in the condemnation of the vessel, for, although Gravely is a British subject, yet he is a resident of Charleston, South Carolina, and engaged in business there, and, for aught that appears, continued in business there since the breaking out of the war. But the portion of the cargo belonging to G. C. & W. J. Munro stands on a different footing, and, in my judgment, is not liable to condemnation. The test oaths of those persons show the following facts, which are not in any way contradicted or impaired: They are, both of them, natives of Newport, Rhode Island,—one born in the year 1812; the time of the other's birth not being stated. They have always resided in that state. They, both of them, have families residing there, and they own the residences in which they live. Since the commencement of their business as partners, which was about 1830, they have been in the habit, during each winter, of going, one of them, to Georgetown, South Carolina, and the other to Wilmington, North Carolina, and elsewhere in the South, making sales of goods, and re-investing the proceeds, and returning, at the end of each business season, to their homes at Newport. During their visits South on business their families remain and reside at their homes. The cargo in question was bought from time to time in the months of May, June, and July, 1861, with the proceeds of goods sold by the firm, and with collections; and the purpose of the investment was to enable them to transfer the funds from the South to New York, or some Northern state. The test oaths also detail the difficulties they encountered by opposition from the authorities at Wilmington in their endeavors to ship the goods North, and the necessity they were under of adopting the expedient of selling the vessel to C. Gravely, with a condition that he should carry the cargo to Liverpool, in order to get the goods out of the country. It does not appear from the proofs that these parties did not leave the South after the breaking out of the disturbances. Indeed, it appears affirmatively that they did leave the country as soon after the disturbances as they could convert their property into funds which could conveniently be carried with them.

Under these circumstances I am of opinion that the decree against the portion of the cargo which belongs to the Munros is erroneous, and should be reversed. The domiciles of the owners were in Newport, Rhode Island, and they were entitled to a reasonable time to withdraw from their business connections in the enemy's country after the breaking out of the war. The San José Indiano [Case No. 12,322]. The barrels of turpentine belonging

---

[1] [Affirming in part and reversing in part The Sarah Starr, Case No. 12,352.]

[2] [Reported by Samuel Blatchford, Esq.]

to Evans, a resident and citizen of North Carolina, were enemy property.

The decree below is affirmed as to the vessel and the cargo belonging to Evans, and is reversed as to the cargo belonging to the Munros.